IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| O. C. MOUZON, #178846, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> WARDEN BROAD RIVER ) <br> CORRECTIONAL INSTITUTION, ) <br> ) <br> Respondent. ) <br> _____) | Civil Action No. 3:09-2253-RBH-JRM <br><br> **REPORT AND RECOMMENDATION** |

Petitioner, O.C. Mouzon, ("Mouzon"), is an inmate at the South Carolina Department of Corrections serving a sentence of fifteen (15) years imprisonment for voluntary manslaughter. Mouzon filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on August 28, 2009. Respondent filed a return and motion for summary judgment on December 18, 2009. Because Mouzon is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on December 21, 2009 advising him of his responsibility to respond to the motion for summary judgment. Mouzon filed his response to the motion on February 16, 2010.

1

## Background and Procedural History

On June 17, 2006, Mouzon stabbed and killed Joann Pompay during an argument in Florence County. He was charged with murder. His attorney, Vick Meetze, Esquire, negotiated a plea to voluntary manslaughter. At the beginning of the plea hearing, the Solicitor announced that the State had agreed to a "cap" of fifteen years.[1] Mouzon's criminal history revealed that he had a record for violent behavior including a New York manslaughter conviction. (App. 8). The Court imposed a fifteen year sentence. Mouzon did not file a direct appeal.

Mouzon filed an application for post-conviction relief ("PCR") on May 14, 2007. (App. 16). A hearing was held on March 31, 2008. (App. 34). Mouzon was represented by Charles T. Brooks, III, Esquire. Both Mouzon and Mr. Meetze testified. The PCR court filed an order of dismissal on April 29, 2008. (App. 53).

A Johnson[2] petition for writ of certiorari by the South Carolina Commission on Indigent Defense raising the following issue:

> Trial counsel erred in failing to explain adequately sentencing consequences in the case.

Pursuant to South Carolina procedure, Mouzon filed a *pro se* brief in which he appears to argue a Miranda violation and prosecutorial misconduct. According to Mouzon's brief "(t)he original prosecutor had promised to make no recommendation to the court at the sentencing hearing in exchange for a guilty plea to a lesser included offense or sentence...At the sentencing hearing, the

---

[1] The maximum penalty for voluntary manslaughter is thirty years imprisonment. *See* S.C.Code Ann. § 16-3-50.

[2] Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (1967).

prosecutor recommended the maximum sentence." The petition for writ of certiorari was denied by the South Carolina Supreme Court on August 6, 2009. The Remittitur was returned on August 24, 2009.

### Grounds for Relief

In his present petition, Mouzon asserts that he is entitled to a writ of habeas corpus on the following grounds:

**GROUND ONE:** Ineffective Assistance of Counsel.

> **SUPPORTING FACTS:** Counsel failed to advise petitioner of promise [that if he pled] guilty, petitioner would receive a lesser sentence. (6th) [Amendment]. And fifth (5th) Amendment.

### Discussion

**1. Procedural Bar**

Respondent argues that even though Mouzon's ground for relief stated above was presented to the South Carolina Supreme Court in the <u>Johnson</u> petition, it was nonetheless "procedurally defaulted under <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-730 (1991), since state appellate procedure precludes the state supreme court from reaching the merits of any allegation that is raised in a <u>Johnson</u> Petition." (Res.Mem., p. 7). The Office of the Attorney General of South Carolina routinely takes this position as to both <u>Johnson</u> petitions and <u>Anders</u>[3] briefs. The undersigned has previously disagreed on both counts. *See* <u>Ehrhardt v. Cartledge</u>, C/A No. 3:08-2266-CMC-JRM (<u>Johnson</u> petition) and <u>Whitt v. McCall</u>, C/A No. 3:09-998-CMC-JRM.

In <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted an appeal procedure to be used when appellate counsel concludes that there are no

---

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967).

3

meritorious grounds to present after denial of a PCR application. The procedure is parallel to the procedure adopted in State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991) for Anders appeals. Pursuant to the procedure, counsel files a petition for writ of certiorari raising potentially meritorious claims,[4] and after notice the prisoner may file a *pro se* brief raising additional claims. The Supreme Court may then deny the petition for writ of certiorari, or grant it and order briefing.

Respondent argues that if the South Carolina Supreme Court denies the petition for writ of certiorari the merits of the claim are not considered leading to procedural default for federal habeas purposes. In essence, the Office of the Attorney General of South Carolina argues that the dismissal of an Anders brief, or the denial of a petition for writ of certiorari based on a Johnson petition, does not satisfy the exhaustion requirement because the appellate court does not consider the merits of the issues raised under these procedures.

In 1990 the South Carolina Supreme Court issued an order which stated:

> We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.

In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief, 321 S.C. 563, 471 S.E.2d 454 (1990).

The United States Supreme Court in O'Sullivan v. Boerckel, 526 U.S. 838 (1999) addressed the question of "(w)hat remedies must a habeas petitioner invoke to satisfy the federal exhaustion requirement?" *Id.,* at 842. The Supreme Court held that state prisoners must "file petitions for discretionary review when that review is a part of the ordinary appellate procedure in the State."

---

[4]Counsel also files a motion to be relieved as counsel.

*Id.,* at 847. In a concurring opinion, Justice Souter explained that "a state prisoner is likewise free to skip a procedure...so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." *Id.,* at 850. In other words, a State can suggest what constitutes exhaustion of its own remedies for purposes of federal habeas relief.

The South Carolina Supreme Court discussed the principles in <u>State v. McKennedy</u>, 348 S.C. 270, 559 S.E.2d 850 (2002), affirming dismissal of an appeal pursuant to <u>Anders</u> by the South Carolina Court of Appeals. The Court noted that the Court of Appeals cited <u>State v. Williams</u>, 305 S.C. 116, 406 S.E.2d 357 (1991) (establishing South Carolina procedure for considering review under <u>Anders</u>), in discussing the <u>Anders</u> appeal and concluded that "(t)he Court of Appeals citation to <u>Williams</u> indicates, at the very least, that it reviewed the merits of the argument Appellant's counsel put forth in the <u>Anders</u> brief." <u>McKennedy</u>, 348 S.C. at 279. The Supreme Court concluded:

> We **AFFIRM** the Court of Appeals and hold this Court's 1990 order, *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief,* 321 S.C. 563, 563, 471 S.E.2d 454, 454 (1990), establishes that seeking discretionary review in this Court is outside of South Carolina's ordinary appellate procedure and, therefore, unnecessary for purposes of exhaustion of this(sic) state remedies under *O'Sullivan.*

*Id.,* at 281.[5]

It seems clear that <u>McKennedy</u> stands for the proposition that from a state perspective, dismissal of an <u>Anders</u> appeal is on the merits, at least for the issues raised in the briefs, for the purpose of federal habeas review. The Office of the Attorney General argues that the holding in

---

[5]The South Carolina Supreme Court noted: "the federal court ultimately will determine whether any issues raised in the Court of Appeals were properly presented for purposes of granting federal habeas relief. To guide them, however, and for the purposes of state law, we find the Court of Appeals dismissal in this case was on the merits. *Id.,* at 279.

5

McKennedy was abrogated by the South Carolina Supreme Court's ruling in Lyles. However, no case has held that McKennedy was abrogated by Lyles. Lyles addressed Anders review by the Court of Appeals and a subsequent petition to the South Carolina Supreme Court following dismissal. However, there is no discussion in Lyles concerning exhaustion relating to federal habeas review. Lyles does not mention McKennedy which addressed the specific issue. *See* Singleton v. Eagleton, 2009 WL 2252272, *9, n. 8 (D.S.C.) and Alonzo-Peterson v. Riley, 2010 WL 427746, *6, n. 6 (D.S.C.). Instead, the Supreme Court addressed the Anders procedure established by Williams and held:

> Under this procedure, a decision of the Court of Appeals dismissing an appeal after conducting a review pursuant to *Anders* is not a decision on the merits of the appeal, but simply reflects that the appellate court was unable to ascertain a non-frivolous issue which would require counsel to file a merits brief. A decision of this nature does not meet the "special and important" standard established by Rule 226(b) and this Court's decisions concerning petitions for writs of certiorari to the Court of Appeals. Accordingly, we deny the petition for a writ of certiorari in this matter. This Court will no longer entertain petitions for writs of certiorari where the Court of Appeals has dismissed an appeal after conducting an *Anders* review.

(Lyles, 381 S.C. at 444-445).

The Office of the Attorney General argues that the language from Lyles that "a decision of the Court of Appeals dismissing an appeal pursuant to Anders is not a decision on the merits of the appeal" abrogates McKennedy. Accepting Respondent's argument would preclude federal habeas consideration of issues raised and dismissed in an Anders appeal assigned to the Court of Appeals, given the procedural policy announced by Lyles. A reasonable reading of McKennedy and Lyles is that a dismissal of an Anders appeal by the Court of Appeals is, from a state perspective, sufficient for exhaustion for federal habeas purposes, but it does "not meet the 'special and important' standard established by Rule 226(b)," SCACR (the rule provides that the Supreme Court has discretionary

6

authority to review decisions of the Court of Appeals and provides a standard that certiorari will be granted "only where there are special and important reasons.").

Therefore, the undersigned rejects Respondent's argument that the holding of McKennedy was abrogated by the Supreme's Court's later decision in Lyles.

In the present case, the Office of the Attorney General makes an analogous argument concerning denial of a Johnson petition for writ of certiorari. The undersigned concludes that this argument is not meritorious ro the reasons stated above.

**2. Ineffective Assistance of Trial Counsel**

Mouzon appears to assert that trial counsel misadvised him as to what sentence he would receive if he pled guilty to voluntary manslaughter.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986).

7

In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the

8

voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

At the PCR hearing, Mouzon testified that he understood the guilty plea procedure. He indicated that Mr. Meetze told him that he would speak with the Solicitor "and try to get me two (2)

9

to fifteen (15) or something in-between." He expressed a hope that he would receive less than fifteen years and that he "was under th impression" that he would receive good time credits against his sentence. (App. 42-44). Mouzon never testified that his attorney gave him erroneous sentencing information. The PCR court concluded that Mouzon had not shown that his attorney was ineffective.

Since Mouzon filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

* * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

Mouzon has not shown that the state court's ruling was contrary to, or a misapplication of, the Strickland standard.

## Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

March 4 , 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).